IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| RANDY WILLIAMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL CASE NO. 1:21-cv-324-ECM |
| | ) | (WO) |
| LESAFFRE YEAST CORP., | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION and ORDER**

**I.  INTRODUCTION**

Now pending before the Court is a motion for summary judgment filed by Defendant Lesaffre Yeast Corp. ("Lesaffre"). (Doc. 23).   Plaintiff Randy Williams ("Williams") brings two claims pursuant to Title VII of the Civil Rights Act of 1964 against Lesaffre for religious discrimination (Count I) and retaliation (Count III).[1]  His claims arise out of his employment at Lesaffre's yeast manufacturing plant in Headland, Alabama, from May 2019 until February 2021.  Based on a thorough review of the record, the briefs, and the applicable law, for the reasons to be discussed, the motion for summary judgment is due to be GRANTED.

---

[1]  Williams concedes that summary judgment is due to be granted as to his age discrimination claim (Count II). (Doc. 28 at 1).

## II.  JURISDICTION

The Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343(a)(4).  The parties do not contest personal jurisdiction or venue, and the Court concludes that venue properly lies in the Middle District of Alabama. *See* 28 U.S.C. § 1391.

## III.  STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(a).  A "genuine" dispute of fact exists "if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996).  An issue of fact is "material" if it could "affect the outcome of the case under the governing law." *Id.*  The movant bears the initial burden to identify evidence showing no genuine dispute of material fact remains, or that the non-moving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  If the movant satisfies this burden, then the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts," and they do so by citing to particular parts of the record or by showing the cited materials do not establish the presence or absence of a genuine dispute. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986); FED. R. CIV. P. 56(c)(1).  If the non-movant fails to support their version of the facts or to properly address the movant's version

of the facts as required by Rule 56(c), then the court may "consider the fact undisputed for purposes of the motion." FED. R. CIV. P. 56(e)(2).

At the summary judgment stage, the Court must view all evidence in the light most favorable to the non-movant and draw all justifiable inferences from the evidence in the non-movant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).  However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment." *Sprowl v. Mercedes-Benz U.S. Int'l, Inc.*, 815 F. App'x 473, 478 (11th Cir. 2020) (quoting *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987)).

## IV.  FACTS AND PROCEDURAL HISTORY

Lesaffre manufactures yeast at a plant in Headland, Alabama.  Its facility encompasses three broad functions:  a filter, a dryer, and packaging. Williams began working at Lesaffre's plant as a packaging operator in 2019.  In the Summer of 2020, when the circumstances relevant to this litigation began to occur, Williams' immediate supervisor was Jeff Tyson ("Tyson").  During Williams' employment, Dennis Barry ("Barry") served as the plant's manager, Garvin Hoffman ("Hoffman") served as its superintendent, and Laura Collins ("Collins") was its head of human resources.  Among other duties, Williams was tasked with stacking, wrapping, and sealing boxes, doing quality control, running and cleaning the sifter, running the stand-up and sit-down forklift, and testing metal.

Williams became concerned that certain co-workers were not performing a required lockout-tagout safety procedure on the plant's sifter machine.  On July 21, 2020, Williams

3

video-recorded co-workers Caleb Cobb ("Cobb"), Thyron Foster ("Foster"), and Tyson failing to perform the lockout-tagout procedure.  Williams warned Cobb about the safety violation, causing Cobb to grow upset.  Williams did not report this incident to his superiors because Tyson, the supervisor to whom he reported safety violations, partook in the breach of procedure.  In the following days, Williams saw Cobb and the others involved in the safety breach enter Hoffman's office to meet with "high HR."

On July 31, 2020, Williams was called into a meeting with Barry, Hoffman, and Collins.  Williams' supervisors informed him that Foster had filed a religious harassment complaint against Williams.  According to Foster's allegations made on July 23, 2020, Williams, a Christian, continually antagonized Foster, a Muslim, over their religious differences.  Foster claimed that Williams continued to discuss his Christian faith, knowing that Foster was not Christian and such conversations made Foster feel uncomfortable. Foster acknowledged he never asked Williams to stop these conversations.

The plant supervisors investigated these allegations, meeting with Foster and two co-workers as witnesses—Cobb and Shaun Swain ("Swain")—to corroborate the charges. The supervisors interviewed Williams on July 31, 2020, regarding the religious harassment allegations.  Williams denied the allegations, saying that he only discussed his Christian faith a few times because he thought it was a normal part of the workplace, given that when he began working at the plant, one employee put bible verses on the board in the breakroom.  Williams admitted that at one point he gave Swain a few bible verses as encouragement for a family issue Swain shared with him.  Williams was never asked by

4

his co-workers to cease discussing his faith in the workplace, nor did he think these conversations were uninvited or harassment.  Williams had no recollection of discussing his faith with Foster, or even knowing to which faith Foster ascribed.

Williams instead offered his own explanation for why Foster filed the religious harassment complaint:  as retaliation for Williams calling him and his co-workers out for failing to perform the lockout-tagout procedure.  After hearing this speculation, Barry told Williams that in the future, if Williams had any safety concerns, then he should report them directly to Barry.

Williams was never disciplined, docked pay, demoted, suspended, or fired on account of Foster's complaint.  The plant supervisors told Williams that he should not engage in offensive religious harassment, which included unwelcomed religious conversations, and that if he engaged in such behavior, then he would be terminated with no second chances.  The supervisors decided not to take disciplinary action against Williams because they could not conclude that he harassed Foster specifically on religious grounds.  The supervisors shared this conclusion with Foster after the July 31, 2020, meeting.  Foster said he had no interest in getting anybody in trouble and just wanted to do a good job for the plant.

In September 2020, Williams suffered a workplace injury to his hip.  At the request of Workers' Compensation, Lesaffre put Williams on light duty at a desk in the plant's warehouse.  While at the desk, Williams grew concerned that his co-workers were driving forklifts dangerously close to his desk.  Cobb and Swain, in particular, broke protocol by

driving the forklifts fast while carrying thousands of pounds and being distracted by music on their headphones.  Williams reported his safety concerns at a meeting with Barry and Collins on January 13, 2021.

On January 28, 2021, Cobb and Swain reached out to Lesaffre's Human Resources ("HR") Director, Kim Hall ("Hall"), to discuss concerns they had with Williams' growingly erratic behavior.  Their concerns were memorialized in written statements provided to Hall.  The statements specified that Cobb met with Hall on January 28, 2021, to complain that Williams constantly talked to himself, banged on his desk, pointed his fingers to the wall and ceiling, argued with himself out loud, and stared uncomfortably at his co-workers.

Swain also came to Hall on January 28, 2021, on his way out of work, "and asked if [Hall] would be [t]here in the morning so he could talk to [her] (he was in a rush to go pick up his spouse)." (Doc. 23-8 at 2).  The next day, on January 29, 2021, Swain met with Hall and reiterated much of what Cobb reported.  Specifically, Swain noted that Williams engaged in unsolicited religious conversations dating back to September and November of 2020, telling Swain at those times: "God has my back"; "God want[s] [me] to tell [you] something through [me]"; "God told me to tell you that if you're doing anything illegal in your car that it will come to light." (*Id.* at 3).  Swain reported to Hall that Williams' behavior had "been getting slowly worse, and after yesterday [January 28, 2021], [Swain] wanted to bring it to [Lesaffre's] attention before something happens." (Doc. 23-8 at 2).  On January 28, 2021, in particular, Swain claimed that Williams stared at him for about

fifteen minutes, which prompted Swain asked Williams "if everything was good." (*Id.*). Williams allegedly gave no response and "just sat there silent staring at [Swain]." (*Id.*). Swain complained that Williams then began laughing "while randomly pointing towards the ceiling." (*Id.*).

The co-workers noted that they and others had grown increasingly uncomfortable with Williams' erratic behavior.  Another anonymous co-worker from the plant's dryer department approached Hall on January 29, 2021, confirming the two other co-workers' accounts of Williams' behavior.  Based on these reports, Barry and Collins decided to terminate Williams.

On January 28, 2021, Williams filed a Formal Charge with the U.S. Equal Employment and Opportunity Commission ("EEOC").  The Charge alleged that, spanning from July 31, 2020, until August 3, 2020, Lesaffre discriminated against him based on his religion and his age and retaliated against him.  He did not indicate that he alleged a continuing action.  As grounds for the Charge, he stated:

> On or about July 31, 2020, I was accused of religious harassment by coworkers.  I believe my peers made this accusation because I witnessed them conducting an unsafe action by failing to perform a lock out/tag out.  I made management and Human Resources aware of the safety violation and in retaliation, I was not promoted on August 3, 2020.

(Doc. 23-9 at 3).  The EEOC called Lesaffre on January 29, 2021, to inform it about Williams' Charge.   The EEOC issued Williams a notice of his right to sue Lesaffre just over a week after he filed the Charge, on February 5, 2021.

7

On the morning of February 2, 2021, Williams met with Garvin and Lesaffre's human resource representatives, who informed him that his employment was terminated and that he had to leave the property. The supervisors gave no reason to Williams for why he was fired. Their reasons for the termination, as explained a few days later to an EEOC investigator, was due to the complaints from co-workers and because Williams was attempting to discuss religious topics with them, which made them uncomfortable.

On April 20, 2021, Williams filed this action in federal court against Lesaffre for religious discrimination (Count I), age discrimination (Count II), and retaliation (Count III). Lesaffre moved for summary judgment. In his response to summary judgment, Williams argued for the first time that he was religiously discriminated against based on the creation of a hostile work environment and harassment. Williams claimed that his superiors' attitude toward him "changed dramatically after" the "investigation" into the religious harassment complaint against him. (Doc. 28 at 5). He stated, "The plant became more and more hostile. Plaintiff was treated in a negative manner because he was a Christian." (*Id.*). Williams further alleged he was placed at a desk in a "very cold" area of the plant, "in a place very close to where forklifts" recklessly moved materials. (*Id.* at 6). Williams also claimed, in his response, that he "asked his supervisors numerous times to be moved to a safer location, but these requests were refused." (*Id.*). After Williams allegedly told his supervisors about the unsafe conditions, he claimed "[n]othing change," and that he was ignored. (Doc. 28 at 7). Additionally, Williams argues in his summary

judgment brief that his retaliation claim is based on his termination immediately after he filed an EEOC Charge.[2]

## V. DISCUSSION

Williams contends that Lesaffre discriminated against him based on his religion and retaliated against him.  Absent direct evidence of religious discrimination or retaliation, a plaintiff may demonstrate circumstantial evidence of discrimination or retaliation through the *McDonnell Douglas* burden-shifting framework. *See Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 252–53 (1981) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).  Because Williams has not offered any direct evidence, the Court addresses his claims under the *McDonnell Douglas* framework. *See Alvarez v. Royal Atl. Devs., Inc.*, 610 F.3d 1253, 1264 (11th Cir. 2010).  Under this framework, an employee creates a presumption of unlawful discrimination or retaliation by first establishing a prima facie case. *See Lewis v. City of Union City*, 918 F.3d 1213, 1220–21 (11th Cir. 2019) (en banc).  If the plaintiff establishes a prima facie case, then the burden shifts to the defendant "to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253).  If the employer does so, then the burden returns to the employee to prove that the employer's proffered reason is pretext for unlawful discrimination or

---

[2] By failing to address most of his theories for religious discrimination and retaliation that he initially alleged in his complaint, Williams has abandoned any claim based on a failure to receive a promotion, an excuse requirement, or denial of a ten-hour workday. *See McMaster v. United States*, 177 F.3d 936, 940–41 (11th Cir. 1999) (noting a claim may be considered abandoned when the allegation is included in the plaintiff's complaint, but he fails to present any argument concerning this claim to the district court); *Coal. for the Abolition of Marijuana Prohibition v. City of Atlanta*, 219 F.3d 1301, 1326 (11th Cir. 2000) ("The appellants' failure to brief and argue this issue during the proceedings before the district court is grounds for finding that the issue has been abandoned.").

retaliation. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir. 2008).  At all times, the ultimate burden of persuasion remains with the plaintiff to show that the defendant intentionally discriminated or retaliated against him. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 508 (1993).  In the summary judgment context, a plaintiff need only present evidence from which a reasonable trier of fact could conclude an employer intentionally discriminated or retaliated against him.

A.    **Sham Declaration**

As an initial matter, the Court disposes of Williams' attempt to offer additional evidence in opposition to Lesaffre's motion for summary judgment through a signed declaration.  Lesaffre argues that this declaration made by Williams is a sham because most of its statements are conclusory or directly in conflict with his deposition testimony. (Doc. 29 at 3).  Williams argues, in reply, that his self-serving statements are admissible to defeat summary judgment because sworn testimony based on first-hand knowledge is admissible, particularly because no facts contained in the declaration conflict with his deposition testimony taken as a whole. (Doc. 28 at 2 n.1).  This, Williams argues, is enough to overcome Lesaffre's allegation that the declaration is a sham.

A party cannot create a genuine issue of material fact with an affidavit that simply contradicts past testimony. *Van T. Junkins and Assocs., Inc. v. U.S. Indus., Inc.*, 736 F.2d 656, 657 (11th Cir. 1984).  A court "may *only* disregard an affidavit that 'contradicts, without explanation, previously given *clear* testimony'" in response to unambiguous questions. *Lane v. Celotex Corp.*, 782 F.2d 1526, 1532 (11th Cir. 1986) (emphasis in

original) (quoting *Van T. Junkins*, 736 F.2d at 657).  The Court recognizes that it would be inappropriate to disregard an affidavit as a sham based on "every failure of memory or variation in a witness's testimony." *Tippens v. Celotex Corp.*, 805 F.2d 949, 953 (11th Cir. 1986).  So, the sham affidavit rule should be applied "sparingly because of the harsh effects it may have on a party's case." *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1316 (11th Cir. 2007) (alteration adopted) (quoting *Rollins*, 833 F.2d at 1530).

The Court, therefore, disregards Williams' declaration as a sham when there is a direct inconsistency between testimony offered in his declaration and that at his deposition, *Tippens*, 805 F.2d at 954, and when there is no explanation for the inconsistency, *Allen*, 495 F.3d at 1316.[3]  The clearest inconsistency between the deposition and the declaration is Williams' claim in his declaration that he was forced to work in an unsafe location, that his superiors refused to move him as requested, and that his requests for a face-to-face meeting with the plant superintendent and manager were ignored.  These facts were not mentioned at Williams' deposition when he was clearly asked to identify any other factual basis of his discrimination claim. (*See* Doc. 29 at 3).  Indeed, the only evidentiary support for these assertions is Williams' declaration.  In his deposition, in contrast to the declaration, Williams makes it clear that his religious discrimination claim is based entirely on the July 31, 2020, meeting and investigation into the religious harassment complaint lodged against him by Foster. (*See* Doc. 23-2 at 158, 170–71).

---

[3]  The Court further notes that, in violation of this Court's instructions in the Uniform Scheduling Order (doc. 14 at 2, Section 2), Williams' summary judgment brief fails to cite to the evidence with appropriate specificity.  Despite this failure, the Court undertook a thorough examination of the evidence in evaluating his claims on summary judgment.

Moreover, in his declaration, Williams claims that, after a workplace injury, he was moved to a desk to do paperwork in a "very cold" area of the plant, where he was "exposed to forklifts carrying as much as 2,000 pounds being driven recklessly." (Doc. 28-1 at 4). He claims he "requested numerous times of [his] supervisors to be put in the Computer Room or the Break Room which would have been much safer, but these requests were refused." (Doc. 28-1 at 4–5).   In his deposition, however, Williams never mentions requesting his desk be moved and did not indicate that he was forced to remain at the desk, even when asked what factual basis he had for his religious discrimination claim.  In fact, in contrast to his declaration, Williams said at his deposition that he made only one request for a meeting, and the plant superintendent and manager met with him face-to-face on January 13, 2021, about his workplace safety concerns. (Doc. 23-2 at 106–05).  His deposition further indicated that Williams' supervisors took his concerns seriously, telling Williams that he "should have told him earlier" about the safety concerns. (*Id.* at 106). Ultimately, Williams clarified at his deposition that his only problem with Lesaffre's management was the July 31, 2020, meeting and religious harassment investigation, and his account of his meetings with management gave no indication that his supervisors treated him harshly or disregarded requests to move his desk. (*Id.* at 112).

Because the facts alleged in Williams' declaration about his hostile work environment directly contradict, without explanation, his deposition testimony, the Court looks only to Williams' deposition or the non-contradictory parts of his declaration for

evidence pertaining to this theory. *See Tippens*, 805 F.2d at 954; *see also Allen*, 495 F.3d at 1316.

### B.   Religious Discrimination

The Court first turns to Williams' religious discrimination claim.  Title VII prohibits employers from discriminating against their employees on the basis of religion. 42 U.S.C. § 2000e-2(a)(1).   Employers must reasonably accommodate an employee's religious observances or practices, unless to do so would impose an undue hardship on the employer's business. *See* § 2000e(j).  Employees may thus utilize two theories in asserting religious discrimination claims:   disparate treatment and failure to accommodate. *See Harris v. Acosta*, 2018 WL 7080617, at *5 (N.D. Ga. Jan. 9, 2018).  The disparate treatment theory mirrors the *McDonnell Douglas* burden-shifting analysis. *See Hellinger v. Eckerd Corp.*, 67 F. Supp. 2d 1359, 1362 (S.D. Fla. 1999).  Williams contends that he provides sufficient circumstantial evidence to demonstrate Lesaffre discriminated against him based on his Christian religion under the disparate treatment theory.

#### 1.   *Prima face case*

To establish a prima facie case of disparate treatment based on his religion, a plaintiff must show (1) he "belongs to a protected class," (2) he "was subjected to an adverse employment action," (3) he "was qualified to perform the job in question," and (4) his "employer treated 'similarly situated' employees outside" his class (comparators) more favorably. *Lewis*, 918 F.3d at 1220–21.  Lesaffre argues that Williams cannot establish a prima facie case of religious discrimination because he cannot show that he was

subject to an adverse employment action or that similarly situated employees outside of his protected class were treated more favorably.

### a.   Adverse employment action

Williams contends that he suffered an adverse employment action when he was subjected to a hostile work environment after the July 31, 2020, investigation into Foster's religious harassment complaint and his supervisors' subsequent antagonism towards him. (Doc. 28 at 11).  To constitute an "adverse employment action," a plaintiff must establish that an employer's decision made a "*serious and material* change in the terms, conditions, or privileges of employment" in a "real and demonstrable way." *Jefferson v. Sewon Am., Inc.*, 891 F.3d 911, 920–21 (11th Cir. 2018) (emphasis in original) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)).  This "impact cannot be speculative and must at least have a tangible adverse effect on the plaintiff's employment." *Id.* at 921 (citation omitted). "A tangible employment action constitutes a *significant* change in employment status, such as hiring, firing, failing to promote, reassignment with *significantly* different responsibilities, or a decision causing a *significant* change in benefits." *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998) (emphasis added).

Although he presents no evidence that his job title, pay, or benefits were altered, Williams argues that, after the July 31, 2020, meeting regarding the religious harassment complaint made against him, there was a hostile change to his work environment. Specifically, he asserts that he was forced to work in an unsafe location, that his superiors refused to move him as requested, and that his requests for a face-to-face meeting with the

plant superintendent and manager were repeatedly ignored.  The primary problem with Williams' argument regarding a hostile work environment, however, is that he raises it for the first time in response to Lesaffre's motion for summary judgment.  And the only evidence Williams submits to support this new claim is his declaration, which directly contradicts his deposition testimony on this point. *See supra* Part IV.B.

A plaintiff generally cannot change the basis of his claims at the summary judgment stage. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) ("[A]t the summary judgment stage, the proper procedure for plaintiffs to assert a new claim is to amend the complaint in accordance with Fed.R.Civ.P. 15(a)." (quoting *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004))).  In *Hurlbert*, the plaintiff's complaint alleged an FMLA violation arising out of the *plaintiff's* serious health condition. *Id.*  In response to the defendant's motion for summary judgment, the plaintiff changed the factual basis of his claims and argued that he was entitled to FMLA leave to care for his *mother*, who was recovering from surgery. *Id.*  The plaintiff argued that "his allegations about his mother do not raise a new 'claim,' [but were] merely additional facts asserted in support of the interference claim already pled in his complaint." *Id.*

The Eleventh Circuit held that the district court properly rejected this argument and did not consider the new factual predicate in ruling on summary judgment. *Id.*  The sole basis for the plaintiff's FMLA claim was "*his* alleged serious health condition.  Thus, the subsequent assertion of an additional, separate statutory basis for entitlement to leave

(caring for a *parent's* serious health condition) effects a fundamental change in the nature of [plaintiff's] claim." *Id.* (emphasis in original) (citation omitted). "Having proceeded through discovery without amending (or seeking to amend) his complaint to reflect that fundamental change, [the plaintiff] was not entitled to raise it in the midst of summary judgment." *Id.*

Similarly, in *Banks v. Marketsource, Inc.*, 2019 WL 8277274, at *6 (N.D. Ga. Dec. 5, 2019), *report and recommendation adopted*, 2020 WL 6291422 (N.D. Ga. Mar. 20, 2020), the plaintiff brought claims for interference and retaliation against the defendant. The complaint alleged the defendant harassed the plaintiff while she was on full-time leave and terminated her when she returned. *Id.* at *7. In her opposition to summary judgment, however, the plaintiff presented a different theory and factual basis for her claims, alleging the defendant failed to advise her of her rights, retaliated against her for taking thirty-minute breaks at work, and denied her intermittent leave before she took the full-time leave referenced in the complaint. *Banks*, 2019 WL 8277274, at *6–7. The plaintiff thus alleged the defendant violated her rights in a manner altogether different than what was described in the complaint. *Id.*

The court in *Banks* ruled that it would "only consider the claims and theories of liability that Plaintiff actually pled in her complaint." *Id.* at *6 (quoting *Wilcox v. Green Tree Servicing, LLC*, 2015 WL 2092671, at *1 (M.D. Fla. May 5, 2015)). The plaintiff could not "recast the scope of her claims beyond the extent to which the pleadings give notice of what actions the plaintiff contends to be unlawful." *Id.* Because the plaintiff

"substitute[d] an entirely new factual predicate for a claim at the summary judgment stage without amending her pleadings," the court found that the summary judgment response did not "merely expound[] upon an otherwise properly noticed claim." *Id.* at *6–7. In line with the holding in *Hurlbert*, the plaintiff in *Banks* could not "fundamentally change the basic factual theory upon which the claims were pleaded and upon which discovery progressed" at the summary judgment stage without first amending her complaint. *Id.* at *8; *see also Mena v. McArthur Dairy, LLC*, 352 F. App'x 303, 307–09 (11th Cir. 2009) (affirming summary judgment when plaintiff sought unpaid overtime in the complaint but argued for minimum wage and straight-time pay for first time on summary judgment because plaintiff had never previously "articulated an argument that should have put [the defendant] on notice of this theory of liability"); *Tindol v. Ala. Dep't of Revenue*, 2015 WL 350623, at *24–25 (M.D. Ala. Jan. 23, 2015) (rejecting plaintiff's attempt at summary judgment to rely on alleged oral statements as creating the contract where complaint pleaded that a contract was based on the defendant's policies, procedures, and handbooks, stating "[plaintiff] is bound to the complaint that he pleaded and which he chose not to amend, and he may not change the theories upon which he seeks relief through summary judgment briefing").

The Court is convinced that this case falls under the holding in *Hurlbert*. In his complaint, Williams predicated his religious discrimination claim on the following facts: (1) Lesaffre did not promote him to a position for which he was qualified and for which he had applied; (2) Lesaffre required him to provide a written excuse for missing work, while

not requiring the same for other employees; and (3) Lesaffre did not allow him to work ten-hour days, while permitting other employees to do so. (*See* Doc. 1 at 4). Williams altogether abandoned these theories by wholly failing to address them in his response to Lesaffre's motion for summary judgment. Instead, Williams argued for the first time that there was a hostile change in his workplace environment when his superiors became antagonist towards him and moved him to a dangerous location. (Doc. 28 at 11).

Consistent with *Hurlbert*, this Court will not consider Williams' new theory for his religious discrimination claim in ruling on Lesaffre's motion for summary judgment. 439 F.3d at 1297. The grounds for his religious discrimination claim articulated in his complaint are abandoned. Notably absent from the complaint was any mention of a hostile work environment. The Court finds that Williams' "subsequent assertion of" a hostile work environment "effects a fundamental change in the nature of [his] claim." *Id.* The parties have "proceeded through discovery without [Williams] amending (or seeking to amend) his complaint to reflect that fundamental change," and thus Williams is "not entitled to raise [this new factual predicate] in the midst of summary judgment." *Id.* This is particularly true where, as here, the factual predicate for the new claim is presented in the form of a sham affidavit.

The Court therefore turns to whether the July 31, 2020, meeting and investigation into the allegations against Williams for religious harassment were adverse employment

actions.[4]  The Court finds that they were not.  A superior's investigation into a matter, without any evidence that it was motivated by animus or that it led to any corrective action by the superior, does not constitute an adverse employment action. *See Entrekin v. City of Panama City*, 376 F. App'x 987, 995 (11th Cir. 2010) ("The investigation of the . . . complaint did not constitute an adverse action, because the complaint ultimately was not sustained and [plaintiff], therefore, suffered no harm from the filing of the complaint."); *Humphrey v. Napolitano*, 847 F. Supp. 2d 1349, 1354–55 (S.D. Fla. 2012) (collecting cases from the "[m]any courts [that] hold that an investigation that does not lead to any action taken against the employee is not an adverse employment action sufficient to state a claim for disparate treatment").  Investigations by a supervisor, while unpleasant, routinely fall short of the "serious and material" threshold necessary to be considered adverse employment actions. *See Davis v. Legal Servs. Ala., Inc.*, 19 F.4th 1261, 1267 (11th Cir. 2021) ("[A] simple paid suspension is not an adverse employment action.  A paid suspension can be a useful tool for an employer to hit 'pause' and investigate when an employee has been accused of wrongdoing."); *Harbuck v. Teets*, 152 F. App'x 846, 848 (11th Cir. 2005) (holding that heightened scrutiny of a plaintiff is not "an adverse employment action or a hostile working environment"); *cf. Summerlin v. M&H Valve Co.*, 167 F. App'x 93, 97 (11th Cir. 2006) ("The reprimand of an employee does not constitute an adverse employment action when the employee suffers no tangible harm as a result.").

---

[4]  As discussed above, the Court does not consider any evidence pertaining to Williams being passed over for a promotion, being required to turn in excuses for missed work, or being restricted to an eight-hour workday because he has abandoned those theories by failing to address them in his response to summary judgment. *See supra* Part IV.A.

Williams has not presented sufficient evidence to show that Lesaffre's investigation into complaints lodged against him, especially when no disciplinary action followed, rose to the level of being "serious and material." *Jefferson*, 891 F.3d at 921.  A tangible adverse employment action must seriously "affect continued employment or pay—things like . . . demotions, suspensions without pay, and pay raises or cuts—as well as other things that are similarly significant standing alone." *Monaghan v. Worldpay US, Inc.*, 955 F.3d 855, 860 (11th Cir. 2020).  In contrast, disciplinary actions "are not sufficiently adverse if they did not cause the plaintiff any present or foreseeable future economic injury.  Similarly, an internal investigation—like any alleged adverse employment action—is not sufficient to state a discrimination claim if it did not cause him . . . negative job consequences." *Henderson v. City of Birmingham*, 826 F. App'x 736, 741 (11th Cir. 2020) (quotations and citation omitted).[5]

Williams was not disciplined as a result of Lesaffre's investigation, and he presents no evidence that his pay or other material aspects of his employment were negatively affected.  The investigation into the allegations against Williams and the subsequent meeting, therefore, did not constitute adverse employment actions.  Even taking the facts in the light most favorable to Williams, the Court finds he has not presented sufficient evidence to support this element of his prima facie case of religious discrimination.

---

[5] While the Court recognizes that *Henderson* is an unpublished opinion, the Court finds its analysis to be persuasive.

20

### b.      Comparators

Williams likewise cannot establish a prima facie case because he cannot identify a "similarly situated" employee outside of his protected class who received more favorable treatment. *See Lewis*, 918 F.3d at 1221.  To make out a prima facie case for religious discrimination based on disparate treatment, Williams must also show that he was treated less favorably than other similarly situated employees who were outside of his protected class.  Lesaffre argues that Williams cannot show any similarly situated comparators were treated more favorably.  In response, Williams identifies all other "co-workers who were not professed Christians" and all other employees at the plant as comparators. (Doc. 28 at 12).  Specifically, Williams points to his declaration as evidence that "he was treated less favorably than his co-workers who were not professed Christians"; that "[n]o one but Plaintiff was made to work in extremely hazardous conditions"; that "[n]o one was accused by his superiors of religious harassment"; and that the employees that "accused Plaintiff of harassment were treated much more favorably than Plaintiff." (Doc. 28 at 12).  Notably, Williams fails to point the Court to evidence in the record to support these conclusions.

The Eleventh Circuit emphasizes that the comparator analysis is central to establishing a prima facie case because "it is only by demonstrating that [an] employer has treated 'like' employees 'differently'—*i.e.*, through an assessment of comparators—that a plaintiff can supply the missing link and provide a valid basis for inferring unlawful *discrimination*." *Lewis*, 918 F.3d at 1223 (emphasis in original).  A plaintiff and comparator must be "similarly situated in all material respects." *Id.* at 1226.  To determine

if a plaintiff and potential comparator were "similarly situated in all material respects," courts consider whether they both (1) engaged in the same basic conduct (or misconduct) as the plaintiff; (2) were subject to the same employment policies, guidelines, or rules as the plaintiff; (3) were under the same supervisor; and (4) shared the same employment and disciplinary history. *Lewis*, 918 F.3d at 1227–28.

To the extent Williams asserts that "all employees" at the plant may qualify as comparators, this is insufficient and not worthy of further analysis. To the extent Williams specifies that all *non-Christian* employees at the plant were valid comparators, it appears from the evidence in the record that Foster was the only non-Christian employee at the plant. (*See* Doc. 23-3 at 2).

The Court finds that Foster is not a valid comparator to Williams because he was not "similarly situated in all material respects." Williams points to no evidence that Foster was engaged in the same alleged misconduct as Williams or shared similar employment or disciplinary history. Foster was "a temporary employee from Personnel Resources in the packaging room at the dryer" and had been at the plant for only two weeks, while Williams was a "packaging operator" that had been at the plant for over fourteen months. (*Id.*). There is no indication that any complaints or warnings had ever been made against Foster. However, Williams had a complaint against him for religious harassment, a verbal warning not to engage in unwelcomed religious discussions, and two behavior complaints made by co-workers during his employment at the plant. (*See* Docs. 23-3, 23-8). Williams also fails to point to evidence that Foster was treated differently, beyond the conclusory allegation

that he was "treated much [more] favorably than Plaintiff." (Doc. 28 at 12).  Given that Foster is not an appropriate comparator, and Williams fails to identify any other, Williams cannot make out a prima facie case under the *McDonnell Douglas* burden shifting framework.

### 2.     *Legitimate non-discriminatory reasons*

Notwithstanding Williams' failure to establish a prima facie case of intentional religious discrimination, Lesaffre has asserted legitimate, non-discriminatory reasons for its employment decisions.  At this stage of the *McDonnell Douglas* analysis, a defendant has a burden of production, not persuasion. *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1174 (11th Cir. 2010).  A defendant "need not persuade the court that it was actually motivated by the proffered reasons." *Id.* (quoting *Burdine*, 450 U.S. at 254).  Rather, a defendant can rebut the presumption of discrimination by articulating a non-discriminatory reason for the employment action. *Id.*  Thereafter, the burden shifts back to the plaintiff to show that the articulated reasons are simply pretext for discrimination. *Id.*

Lesaffre conducted an investigation into a religious harassment complaint against Williams based on a credible accusation. (*See* Doc. 23-3).  Such an investigation was reasonable under the circumstances. *Baldwin v. Blue Cross/Blue Shield of Ala.*, 480 F.3d 1287, 1303 (11th Cir. 2007) ("A threshold step in correcting harassment is to determine if any occurred, and that requires an investigation that is reasonable given the circumstances.").  Lesaffre, therefore, has satisfied its burden of production.

### 3.     *Pretext*

With evidence of legitimate, nondiscriminatory reasons for the actions of which he complains, Williams fails to offer sufficient evidence that Lesaffre's proffered reasons were pretext for intentional discrimination.  Upon a defendant's production of a legitimate, nondiscriminatory reason for the adverse employment actions, the presumption in favor of a plaintiff is rebutted and falls away. *Burdine*, 450 U.S. at 255.  The burden shifts back to the plaintiff to show that the defendant's explanation is pretextual, and that discrimination motivated it. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 143 (2000).

A plaintiff can show pretext "directly by persuading the court that a discriminatory reason more likely motivated the employer" or indirectly by showing the employer's explanation is not believable. *Burdine*, 450 U.S. at 256.  The plaintiff must show that the defendant's "proffered reason was not its true reason, which merges with the plaintiff's ultimate burden of persuading the court that the employer intentionally discriminated against [him]." *Alvarez*, 610 F.3d at 1265.  Williams' religious discrimination claim also fails here.

To show pretext, the plaintiff must demonstrate "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Id.* (quoting *Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997)).  In some cases, proof that an employer's asserted justification is false, when coupled with the

evidence establishing the plaintiff's prima facie case, is sufficient to permit an inference of discrimination. *See Reeves*, 530 U.S. at 148.

However, Williams' evidence of pretext is entirely rooted in his own beliefs and inferences and relies on unsubstantiated allegations and conclusory statements that are insufficient to meet his burden. *Rollins*, 833 F.2d at 1529 ("[U]nsubstantiated assertions alone are not enough to withstand a motion for summary judgment."). Williams tells the Court that "[t]here is abundant evidence of pretext here. Foster was motivated to get back at Plaintiff for calling him out for not following company policy." (Doc. 28 at 13). However, Foster's motivation to "get back at" Williams for reporting Foster's failure to follow safety protocols is not evidence of religious discrimination against Williams by Lesaffre. In any event, Williams' conclusory allegation about "abundant evidence" without a citation to the record fails to rebut Lesaffre's nondiscriminatory reasons for meeting with him on July 31, 2020, and investigating allegations against him. *Carter v. Three Springs Residential Treatment*, 132 F.3d 635, 642 (11th Cir. 1998) (holding conclusory allegations without specific supporting facts have no probative value); *EEOC v. Flasher Co.*, 986 F.2d 1312, 1319 (10th Cir. 1992) ("Title VII does not make unexplained differences in treatment per se illegal nor does it make inconsistent or irrational employment practices illegal. It prohibits only intentional discrimination based upon an employee's protected class characteristics.").

To the extent Williams argues that Foster's complaint itself shows pretext sufficient to maintain a religious discrimination claim, such an argument also fails because Foster

was a co-worker—not the decision-making employer. *See* 42 U.S.C. § 2000e-2 (making it unlawful for "an employer" to discriminate on the basis of race); *cf. Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269, 1278 (11th Cir. 2002) ("Where the perpetrator of the harassment is merely a co-employee of the victim, the employer will be held directly liable if it knew or should have known of the harassing conduct."); *Evans v. McClain of Ga., Inc.*, 131 F.3d 957, 962 (11th Cir. 1997) (holding that, because a certain co-worker was not a decisionmaker with respect to the employer's allegedly-discriminatory decisions, the co-worker's racially-discriminatory remarks did not provide direct evidence that the employer discriminated on the basis of race).   Moreover, as the Court discussed above, the mere investigation into Foster's complaint by Lesaffre was a reasonable response to an employee complaint and did not constitute an adverse employment action.   Accordingly, Williams cannot demonstrate a genuine dispute of material fact sufficient to submit his claim to a jury, and therefore Lesaffre is entitled to summary judgment on Williams' religious discrimination claim.

## C.   Retaliation

Next, Williams argues that Lesaffre unlawfully retaliated against him when it terminated his employment after he filed a Charge of discrimination against it with the EEOC.   A Title VII retaliation claim based on circumstantial evidence is ordinarily analyzed under the *McDonnell Douglas* framework. *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1289 (11th Cir. 2021).   To establish a prima facie case of retaliation, a plaintiff must demonstrate that (1) he engaged in statutorily protected activity;

(2) he suffered an adverse employment action; and (3) a causal connection exists between the protected activity and the adverse action. *Tolar*, 997 F.3d at 1289.  A plaintiff often satisfies the "causal connection" element of his prima facie retaliation case by pointing to "[c]lose temporal proximity between protected conduct and an adverse employment action." *Hurlbert*, 439 F.3d at 1298.  If the plaintiff establishes a prima facie case, the burden then shifts to the employer to articulate a legitimate, nonretaliatory reason for its decision. *Tolar*, 997 F.3d at 1289.

If the employer articulates a legitimate, nonretaliatory reason, then the burden shifts back to the employee to establish that the employer's proffered reason "was not the real basis for the decision, but a pretext for retaliation." *Id.* (quotations and citation omitted). In doing so, the plaintiff "must meet that reason head on and rebut it." *Gogel v. Kia Motors Mfg. of Ga., Inc.*, 967 F.3d 1121, 1136 (11th Cir. 2020) (citation omitted).  A plaintiff meets the reason "head on" by presenting evidence that demonstrates "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." *Gogel*, 967 F.3d at 1136 (citation omitted).  To demonstrate the employer's reason was indeed pretext for retaliation, the plaintiff must produce evidence sufficient to permit an inference that, "but for" his protected activity, the employer would not have taken the alleged adverse action. *Tolar*, 997 F.3d at 1294.

Lesaffre does not contest that Williams' EEOC Charge constituted a protected activity nor that his termination was an adverse employment action. (Doc. 23 at 20).  They

argue that there was no causal connection between the Charge and his termination, and that even if there was, Williams cannot rebut Lesaffre's proffered legitimate, nonretaliatory reason for firing him.

The Court finds that the temporal proximity of Williams' EEOC Charge and his termination is sufficient to satisfy the causal element of his prima facie retaliation case. Williams presents evidence that he filed his EEOC Charge on January 28, 2021, and that the EEOC informed Lesaffre of the Charge on January 29, 2021. Just a few days later, on February 2, 2021, Williams was terminated by Lesaffre. Such "close temporal proximity between" Williams' protected activity (his EEOC Charge) and an adverse employment action (his termination) satisfies the "causal connection" element of his prima facie retaliation case. *See Hurlbert*, 439 F.3d at 1298 (holding termination two weeks after plaintiff's protected activity satisfied the "causal connection" element of the prima facie retaliation case).

Nevertheless, Williams fails to rebut Lesaffre's proffered legitimate and nonretaliatory reason for terminating his employment. Lesaffre has articulated a legitimate, nonretaliatory reason for terminating Williams: it received complaints from his co-workers alleging continued erratic and uncomfortable behavior, including uninvited religious conversations after Williams had been warned that such conversations would result in termination "with no second chances." (Docs. 23-3 at 7, 23-8). The Eleventh Circuit has "repeatedly and emphatically held that a defendant may terminate an employee for a good or bad reason without violating federal law. [Federal courts] are not in the

business of adjudging whether employment decisions are prudent or fair." *Damon*, 196 F.3d at 1361 (citation omitted).  Lesaffre, therefore, has satisfied its burden.

With the burden shifting back to Williams to rebut Lesaffre's nonretaliatory reasons, Williams has failed to produce sufficient evidence that "but for" his EEOC Charge, he would not have been terminated. *See Tolar*, 997 F.3d at 1294.  Cobb made his complaint of Williams' troubling activity to Hall on January 28, 2021, before Lesaffre learned about Williams' EEOC Charge.  Moreover, also on January 28, 2021, Swain reported to Hall that he would come see her the next day regarding Williams' erratic behavior, setting in motion the complaint and investigation process prior to knowledge of a protected activity.   In Swain's complaint memorialized on January 29, 2021, he claimed that dating back to September and November of 2020, Williams had been engaging in unwelcomed religious conversations that made him uncomfortable.   These conversations occurred despite Williams' supervisors having told him that any continued unwelcomed religious conversations would result in immediate termination.  Cobb's and Swain's complaints to Lesaffre predated Lesaffre's notice of Williams' EEOC Charge.  The complaints were regarding continuous, troubling workplace conduct by Williams after a warning.  The Court will not question the wisdom of the employer's decision to terminate an employee who engaged in workplace misconduct. *See Damon*, 196 F.3d at 1361.

Although the co-workers' complaints against Williams predated Lesaffre's notice of the EEOC Charge, the decision to terminate him occurred shortly thereafter.  However, Williams has not shown "weaknesses, implausibilities, inconsistencies, incoherencies, or

contradictions" in Lesaffre's stated reason for discharging him—complaints from co-workers alleging continued erratic and uncomfortable behavior, including uninvited religious conversations—"sufficient to provide a legitimate ground for a reasonable factfinder to find that explanation to be unworthy of credence." *Gogel*, 967 F.3d at 1137. Irrespective of the close temporal proximity of Williams' Charge and his termination, Williams has not presented any evidence from which "one could reasonably infer that" had he not filed a Charge with the EEOC, Lesaffre "would not have" terminated him based on the complaints made by his coworkers on January 28 and 29, 2021, about activity spanning back four months. *See Tolar*, 997 F.3d at 1294; *see also Gogel*, 967 F.3d at 1137 n.15 ("While close temporal proximity between the protected conduct and the adverse employment action can establish pretext when coupled with other evidence, temporal proximity alone is insufficient."). Therefore, Lesaffre is entitled to summary judgment on Williams' retaliation claim.

## VI.  CONCLUSION

Accordingly, for the reasons stated and for good cause, it is

ORDERED that Lesaffre's motion for summary judgment (Doc. 23) is GRANTED.

A separate Final Judgment will enter.

Done this 1st day of March, 2023.

_____/s/ Emily C. Marks_____
EMILY C. MARKS
CHIEF UNITED STATES DISTRICT JUDGE